MARK K. SCHONFELD (MS-2798)
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
3 World Financial Center, Room 400
New York, NY 10281
(212) 336-0080 (Brody)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
SECURITIES AND EXCHANGE COMMISSION,     :
:
Plaintiff,     :
:              07 Civ. _____ ( )
-against-     :
:
:
THOMPSON PRICE HOLDING INC. AND     :
DAMIR LUKOVIC a/k/a GREG THOMPSON   :
:
Defendants.     :
:
------------------------------------------------------------------x

## DECLARATION OF DAWN LIBAL IN SUPPORT OF ITS EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDERS, PRELIMINARY INJUNCTIONS, ORDERS TO SHOW CAUSE, <u>ASSET FREEZES, ACCOUNTINGS, AND OTHER RELIEF</u>

I, DAWN LIBAL, under penalty of perjury pursuant to 28 U.S.C. § 1746, state:

1.   I am over 18 years of age. I am employed by the plaintiff United States Securities and Exchange Commission (the "Commission") as a Staff Accountant in the Broker-Dealer Inspection Program in the Commission's New York Regional Office located in New York, New York.

2. As a Staff Accountant, I am familiar with the process of reviewing financial records, including bank records, with the process of analyzing information contained in such records, and with the process of organizing such information for presentation in spreadsheets or similar formats.

3. This declaration references certain exhibits attached to this declaration. Some of the documents contained therein have been redacted to remove personal information of certain individuals.

4. As a part of my duties as a Staff Accountant with the Commission, I have participated in the Commission's private investigation entitled "In the Matter of Thompson Price Holdings Inc." As part of my participation, I have reviewed documents showing that Thompson Price Holding Inc. ("Thompson Price") is a New York corporation. As a part of my participation, I also have reviewed documents produced by JP Morgan Chase pursuant to a subpoena issued by the Commission concerning the checking account of Thompson Price, account number 72612973 (the "JP Morgan Account"). The documents produced pursuant to subpoena by JP Morgan Chase (the "JP Morgan Account Records") are identified as Exhibit A and contain the following:

   a. Account opening form;

   b. Monthly statements for the JP Morgan Account;

   c. Copies of items deposited in the JP Morgan Account; and

   d. Copies of items drawn on the JP Morgan Account.

5. The account opening document for the JP Morgan Account, dated October 25, 2006, indicates that Damir Lukovic ("Lukovic"), the President of Thompson Price, was the sole signatory on the JP Morgan Account. Ex. A, p. 2. The address given for Thompson Price was

130 7th Avenue, New York, NY 10011. <u>Ibid</u>. It appears that Lukovic signed the account opening document as Secretary of Thompson Price. <u>Ibid</u>.

6. The monthly account statements for the JP Morgan Account cover the period of October 25, 2006 through August 31, 2007. Ex. A. The monthly account statements for the JP Morgan Account reflect deposits of $93,040, consisting mostly of deposits of checks. I note that Lukovic endorsed most of the checks deposited into this account.

7. At least $92,940 of the deposits into the JP Morgan Account came from Probable Investor Funds. I characterized a deposit as "Probable Investor Funds" if:

   a. The instrument itself indicated that the funds were being used for the purchase of stock, for participation in an IPO (initial public offering), or for the purchase of securities, or if the instrument itself referred to a price per share; or

   b. In interviews with Commission staff, investors have identified the purpose of the instrument as being the purchase of securities.

8. The account statements for the JP Morgan Account reflect a total of $76,143.50 in ATM withdrawals (and related ATM withdrawal fees) during the period of October 25, 2006 through August 31, 2007. Most of the ATM withdrawals took place in Brooklyn, New York and Clifton, New Jersey. I have reviewed documents obtained during the investigation that show that Lukovic has resided in Clifton, New Jersey and Brooklyn, New York. The records reflect ATM withdrawals from different ATMs on the same day. For example, on February 12, 2006, $2,600 was withdrawn from the following locations in Brooklyn:

| Location | Amount |
|---|---|
| 2560 Ocean Avenue | $601.50 |
| 1722 Avenue U | $600.00 |
| 2730 Coney Island Avenue | $600.00 |
| 1722 Avenue U (2nd time) | $401.50 |
| 2730 Coney Island Avenue (2nd time) | $400.00 |

Exhibit B contains a map identifying the locations of these ATMs in Brooklyn.

9.  The JP Morgan Account Records also reflect two checks drawn on the JP Morgan Account (check numbers 1001 and 1002) made payable to Damir Lukovic for the total amount of $16,500.

10. During October 2007, I conducted several interviews of persons who appeared to have sent checks to Thompson Price for the purpose of purchasing securities. These interviews are summarized below:

   a. **Wilbur Littlefield:** Littlefield is an 85 year-old retired lawyer who resides in California. Littlefield made two investments through Thompson Price. On or around December 5, 2006, Littlefield received an unsolicited telephone call from Thompson Price (he did not recall the name of the individual with whom he spoke) to purchase shares in an IPO of XRF Scientific Limited ("XRF"). Shortly thereafter, he received a prospectus for XRF from Thompson Price. On or around December 11, 2006, Littlefield sent a $3,200 investment check (made payable to Thompson Price) to Thompson Price for the purpose of purchasing shares of XRF Scientific Limited. In January 2006, Littlefield received a second solicitation from Thompson Price recommending the purchase of shares of Cyclopharm Group Limited ("Cyclopharm"). On or around January 31, 2007, Littlefield sent a

- 4 -

$2,400 investment check (made payable to Thompson Price) to Thompson Price for the purpose of purchasing 10,000 Cyclopharm shares. Littlefield never received any stock certificates representing his purchases and has never received a refund of his investment funds.

b. **Eugene Bazaar:** Bazaar is a 59 year-old salesman who resides in Kentucky. Bazaar made one investment through Thompson Price. On or around December 11, 2006, Bazaar received an unsolicited telephone call from a person who identified himself as Greg Thompson from Thompson Price to purchase shares in XRF. As a result of this telephone conversation, Bazaar believed that Greg Thompson was a stockbroker. Bazaar agreed to purchase 20,000 XRF shares at $0.16 per share, for a total investment of $3,200. Shortly thereafter, he received a letter from Thompson Price confirming the purchase of XRF stock and a prospectus for XRF. Bazaar sent a $3,200 investment check (made payable to Thompson Price) to Thompson Price for the purpose of purchasing shares of XRF. Bazaar also received an account opening form from Thompson Price. He completed the form and sent it back to Thompson Price. In January and April 2007, Bazaar spoke with Greg Thompson and requested that Thompson Price sell his holdings in XRF stock. On both occasions, Greg Thompson told Bazaar that it was not possible to sell Bazaar's stock because his holdings were part of a larger block of XRF stock that could not be split. Bazaar never received any stock certificates representing his purchases. Exhibit C is an exemplar of documents produced to the staff by Bazaar concerning his investment through Thompson Price.

c. **Gary Longhurst:** Longhurst resides in Idaho. Longhurst made one investment through Thompson Price. In or around April 2007, Longhurst received an unsolicited telephone call from an individual named "Steve Johnson" at Thompson Price. Johnson told Longhurst that Thompson Price offers IPOs in Australian companies. Longhurst believed Thompson Price was a brokerage firm, and that Johnson was a stockbroker. Shortly thereafter, he received a prospectus for Hydrotech International Ltd. ("Hydrotech"), and he sent two investment checks (for a total of $6,000, both made payable to Thompson Price) to Thompson Price for the purpose of purchasing shares of Hydrotech. On or around October 10, 2007, Longhurst was solicited by Steve Johnson of Thompson Price to purchase shares in another Australian company. Longhurst never received any stock certificates representing his purchases.

d. **Robert Pasa:** Pasa is a 54 year-old registered nurse who resides in Pennsylvania. Pasa made one investment through Thompson Price. In or around April 2007, Pasa received an unsolicited telephone call from a person who identified himself as Greg Thompson of Thompson Price to purchase shares in an IPO of TWT Group Ltd. ("TWT"). Pasa believed Thompson Price was a brokerage firm. Shortly thereafter, he received a prospectus for TWT from Thompson Price. On or around April 24, 2007, Pasa sent a $950 investment check (made payable to Thompson Price) to Thompson Price for the purpose of purchasing shares of TWT. Pasa sent the check via overnight delivery service to Thompson Price's office in Manhattan. Pasa never received any stock certificates representing his purchases and has never received a refund of his investment funds. During the

week of October 1, 2007, Pasa spoke with Greg Thompson and inquired about his investment in TWT. During that telephone call, Greg Thompson attempted to sell Pasa shares of a different IPO. Exhibit D is an exemplar of documents produced to the staff by Pasa concerning his investment through Thompson Price.

e. **John McGee:** McGee is a 69 year-old retiree who resides in South Carolina. McGee made one investment through Thompson Price. In or around July 2007, McGee received an unsolicited telephone call from a person who identified himself as Greg Thompson of Thompson Price to purchase shares in an IPO of Hydrotech. Shortly thereafter, he sent a $1,600 investment check (made payable to Thompson Price) to Thompson Price for the purpose of purchasing shares of Hydrotech. McGee never received any stock certificates representing his purchase and has never received a refund of his investment funds. During the first two weeks of October 2007, McGee spoke with Greg Thompson and inquired about his investment in Hydrotech. Greg Thompson stated that McGee could sell his shares in Hydrotech and use the proceeds to purchase shares of an IPO in Global Construction Services Limited ("GCS"). Recently, Greg Thompson has also solicited purchases of Laser Bond stock from McGee. Exhibit E is an exemplar of documents produced to the staff by McGee concerning his investment through Thompson Price.

f. **Klaus "Pete" Landau:** Landau is 63 years old and self-employed. He resides in Colorado. Landau made a series of investments through Thompson Price. In or around April 2007, Landau received an unsolicited telephone call from a person who identified himself as Greg Thompson of Thompson Price to purchase shares

in an IPO of TWT. Shortly thereafter, he sent a $9,500 investment check (made payable to Thompson Price) to Thompson Price for the purpose of purchasing shares of TWT. At or around the time of the TWT solicitation, Greg Thompson told Landau that his investments with Thompson Price would earn more than 100 percent rate of return in a period of three to six months. Landau never received any stock certificates representing his purchases and has never received a refund of his investment funds. On or around October 1, 2007, Landau spoke with Greg Thompson and asked to sell some of his investments. Greg Thompson told Landau that he could not sell Landau's investments because they were part of a group that was not postured to sell at that time. Exhibit F is an exemplar of documents produced to the staff by Landau concerning his investment through Thompson Price.

g. **Milton Knabusch:** Knabusch is a 87 year-old retiree who resides in Michigan. Knabusch made one investment through Thompson Price. In or around November 2006, Knabusch received an unsolicited telephone call from a person who identified himself as Greg Thompson of Thompson Price to purchase shares in an IPO of XRF. On or around November 9, 2006, Knabusch sent a $3,040 investment check (made payable to Thompson Price) to Thompson Price for the purpose of purchasing shares of XRF. Knabusch never received a refund of his investment funds. Knabusch did receive an investment report from Thompson Price stating that his investment in XRF was valued at $4,180 as of December 31, 2006. Exhibit G is an exemplar of documents produced to the staff by Knabusch concerning his investment through Thompson Price.

    h. **Leo Bruss:** Bruss is an 84 year-old retiree who resides in Oregon. Bruss made several investments through Thompson Price. In or around December 2006, Bruss received an unsolicited telephone call from a person who identified himself as Greg Thompson of Thompson Price to purchase shares in an IPO of Cyclopharm. Based on Greg Thompson's statements to him in December 2006, he agreed to purchase 20,000 shares of Cyclopharm at a price of $0.24 a share, for a total investment of $4,800. Since December 2006, Bruss has received similar solicitations from Greg Thompson. In total, he sent $67,340 to Thompson Price for the purpose of purchasing stock in Cyclopharm and TWT. He has not received any share certificates for either Cyclopharm or TWT from Thompson Price, and he has not received any monthly or other statements from Thompson Price showing his ownership of securities of Cyclopharm or TWT. Exhibit H is an exemplar of documents produced to the staff by Bruss concerning his investment through Thompson Price.

11. I have reviewed the JP Morgan Account Records and the documents produced by the investors identified in paragraph 10 above. Based upon my analysis of those records, as well as my interviews of the investors identified in paragraph 10 above, I have determined that at least 10 investors sent $107,730 to Thompson Price for the purpose of purchasing securities in the following companies: Cyclopharm, TWT, XRF, and Hydrotech. Exhibit I is a spreadsheet that I prepared that identifies the investors, the amount of money that each sent to Thompson Price, and the securities the investors intended to purchase with those funds.

12. On October 15, 2007, I conducted a search of the NASD's Central Registration Depository database, together with the EDGAR database maintained by the Commission, to

determine whether Thompson Price, Greg Thompson, or Damir Lukovic were registered as broker-dealers or investment advisers. The search of these databases showed no evidence that Thompson Price, Greg Thompson, or Damir Lukovic were registered with the Commission as broker-dealers or as investment advisers. The search also showed no evidence that Thompson Price, Greg Thompson, or Damir Lukovic were associated with a registered broker-dealer or investment adviser.

13. I have reviewed documents produced by UPS pursuant to subpoena issued by the Commission concerning the mailbox address of Thompson Price (130 7th Avenue, Suite 359, New York, NY 10011). The documents produced pursuant to subpoena by UPS are marked as Exhibit J and contain the following:

   a. A mailbox service agreement between Lukovic and The UPS Store;

   b. Photocopies of a permanent resident card and employment authorization card for Lukovic; and

   c. An application for delivery of mail through agent.

14. I have reviewed documents produced by T-Mobile pursuant to subpoena issued by the Commission concerning the telephone number (646) 852-5065, which is listed as Lukovic's telephone number on documents contained in Exhibit J. The T-Mobile records for the telephone number list Lukovic as the subscriber and state that Lukovic's address is 918 E 14th St. Apt. F1, Brooklyn, New York.

15. I am aware that, in October 2007, a member of the Commission staff spoke with senior executives employed by the lead managers and sponsoring brokers for the IPOs of Cyclopharm, TWT, XRF, and GCS. Without exception, those executives told the staff member that they had never heard of Thompson Price, and that, to the best of their knowledge, Thompson

Price had no relationship with the companies or the companies' IPOs, and never received an allocation of shares in connection with those IPOs. I am also aware that the staff is in the process of attempting to contact executives at Hydrotech and Laser Bond.

16. I am aware that the staff of the Commission has issued a subpoena for records concerning Thompson Price's current address, which is a call center located in New York City.

I declare under penalty of perjury that the foregoing is true and correct.

Dated at New York, New York, October 25, 2007.

*Dawn Libal*
DAWN LIBAL